**OLIVE FARAPO, TEKURA ALU, LILLY PAUMBARI,**
**Appellants**

**v.**

**AMERICAN SAMOA GOVERNMENT, CHIEF**
**IMMIGRATION OFFICER, IMMIGRATION BOARD,**
**and ATTORNEY GENERAL, Appellees**

High Court of American Samoa
Appellate Division

AP No. 21-92

February 24, 1993

Before KRUSE, Chief Justice, RICHMOND, Associate Justice, TAUANU'U, Chief Associate Judge, BETHAM, Associate Judge.

Counsel:       For Appellants, Charles V. Ala'ilima
               For Appellees, Elvis R.P. Patea, Assistant Attorney
               General

Appellants, nationals of Papua New Guinea, have filed a petition pursuant to A.S.C.A. § 41.0209, seeking judicial review of the decision and order of deportation entered by the Immigration Board (hereinafter the "Board") on October 23, 1992. The Board concluded that appellants were deportable under both A.S.C.A. § 41.0312, finding that appellants had failed to report their change of address to the Attorney General as required by the provisions of A.S.C.A. § 41.0308, and A.S.C.A. § 41.0408, finding that appellants' sponsors, Starr and Su'a Schuster, had revoked their sponsorship of appellants.

*A.  Failure to report address change*

The Board's findings include the following:

3.      On September 24, 1992, the Respondents ran
        away from the Schuster residence.

        . . . .

6.      On October 5, 1992, Charles V. Ala'ilima wrote a
        letter to Chief Immigration Officer So'oso'o
        Tuiolemotu, informing Mr. Tuiolemotu of his
        representation of the Respondents and of the
        whereabouts of the Respondents. There is no evidence
        as to *when* Mr. Tuiolemotu received Mr. Ala'ilima's
        letter.

(Emphasis in original.) On the basis of the foregoing findings, the Board
made the following conclusions of law:

1.      All aliens are required to notify the Attorney General
        in writing of each change of address and new address
        within ten (10) days from the date of such change. §
        41.0308, ASCA. The burden is on the alien to provide
        such notification.

2.      The Respondents left their address on September 24,
        1992 and had until October 4, 1992 to report their new
        address. This was not done. October 4, 1992 fell on
        a Sunday. Allowing the tenth day to fall on the next
        business day (Monday, October 5, 1992) defeats the
        intent of the requirement that notification be made, and
        that it be made within ten (10) calendar days.
        Furthermore, no evidence was presented providing any
        compelling reason why the notification couldn't be
        done before Sunday, October 4, 1992.

        We hold that the Board's computation of the ten-day statutory
period for reporting an address change was premised on an erroneous
construction of the statute. A.S.C.A. § 41.0308(b) specifies a ten-day
time period; it does not, as the Board's, "ten calendar days"
interpretation suggests, specify a nine-day limit, when the tenth day falls
on a Saturday or public holiday; or an eight-day limitation, when the

138

tenth day falls on a Sunday; or a seven-day limitation period, when the tenth day falls on the last day of a three-day weekend, etc.[1] Since the Attorney General's Office is not open to the public on weekends and public holidays, the statute can only sensibly be given effect if the prescribed period is computed to exclude the last day when it happens to fall on a Saturday, Sunday, or legal holiday. *Cf.* Fed. R. Civ. P. 6(a); A.C.R. Rule 26(a); T.C.R.C.P. Rule 6(a). As such, the statutory ten-day period may not be cut short, nor may a person be required to show, as the Board also suggests, why he needs the full ten days.

The letter from appellants' counsel is dated October 5, 1992, and the Immigration Office's response to counsel is dated October 6, 1992. *See* Finding of Fact No. 6. Although the Board finds that no proof exists that the Immigration Office received counsel's letter, the Immigration Office's prompt response to counsel is persuasive evidence of its receipt of that letter. Furthermore, because evidence as to the date of receipt is under the control of the Immigration Office, it is not reasonable for the Immigration Office to demand that appellants provide this proof. *Cf.*, T.C.R.Ev. Rule 1004(3) (if an opposing party will not produce a document under its control, the other party need not produce the original document). We accordingly hold that the Board's conclusions are also "clearly erroneous in view of the reliable, probative and substantial evidence on the whole record." A.S.C.A. § 41.0212(5).

## B. *Revocation of sponsorship*

The other substantive issue was the sponsorship's termination, purportedly accomplished by Mrs. Schuster's letter to the Board dated September 30, 1992. At the deportation hearing, the appellants agreed that the Schusters were their sponsors. Also, the appellants had signed "Alien Registration Forms" listing Mrs. Schuster as their sponsor.

Appellants argued that because Mrs. Schuster sent the notice only to the Board, the sponsorship was never terminated. However, their counsel was served with written notice by Immigration Officer Herota Satele on October 6, 1992. Even if notifying aliens is not a function of either the Immigration Office or the Board, the statute's purpose of

---

[1] We take judicial notice of the recent five-day weekend which arose as the result of New Year's Day's falling on a Friday and the new governor's inaugural declaration of a two-day government holiday for the following Monday and Tuesday.

giving both aliens and the Board notice was fulfilled; the appellants did actually receive notice of their sponsorship's revocation.

Appellants also argue that the Board has the discretion to stop Mrs. Schuster from terminating the sponsorship or to condition termination on paying wages and taxes. However, no provision requires the Board to approve a sponsorship's termination or gives it the power to impose conditions on a sponsorship's termination, although it may revoke a sponsorship without a sponsor's permission. *See* A.S.C.A. § 41.0408(f), (g). Whether the sponsorship was terminated to attempt to avoid paying wages and, if so, how much money is due to appellants are both issues to be decided in a civil suit. Those issues are separate from the factual questions as to whether the sponsorship was terminated or whether the change-of-address notice was given within ten days.

## C. Procedural Challenge

Additionally, appellants seek review on a number of procedural due process grounds. Among other things, they claim failure on the Board's part to afford them a public hearing, in violation of A.S.C.A. § 41.0205, as well a reasonable opportunity to examine the evidence against them and cross-examine witnesses, in violation of A.S.C.A. § 41.0607(3); they also allege illegal arrest and detention.

The Immigration Board may deport an alien only "after the alien has been accorded an opportunity for a public hearing." A.S.C.A. § 41.0205(2). The language is clear; the Fono decided to give aliens about to be deported the right to have a public hearing. Although hearings may be closed under certain circumstances, the Board's discretion is not unbridled. Under its rules, the Board may only close deportation hearings "for the purpose of protecting witnesses, [the] respondent, or [the] public interest" in a "specific case." A.S.A.C. § 41.0807(a). Although closed hearings might occasionally be needed, the Board has not demonstrated extraordinary circumstances that might justify a closed hearing. *See Masaniai v. American Samoa Government*, 6 A.S.R.2d 114, 116 (App. Div. 1987) (criminal trial court may exclude the public when an overriding interest or special or exceptional circumstances exist). A normally open proceeding may be closed only if the interest in doing so is shown to outweigh the "value of openness." *See Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 509-10 (1984) (First Amendment guarantees open proceedings in criminal trials, including the voir dire process) (citing *Globe Newspaper Co. v. Superior Court*, 457

140

U.S. 596 (1982)). The limited circumstances in which open proceedings may be closed are as follows:

> The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.

*Id.* at 510 (citing *Globe Newspaper*).

Here the Board simply found that the matter "involved *private* differences between the Respondents and the Schusters," and thence concluded "that the protection of those *private* matters outweighed any need to open the hearing to the public." (Emphasis added.) While the Board articulated "private differences" as being the overriding interest, it failed to enumerate findings specific enough to allow a reviewing court the opportunity to determine whether the closure order was properly entered. While a lack of seating may sometimes limit the number of people able to attend an open hearing, it does not justify closing the hearing entirely. All that can be said from the extent of the record before us is that *private* differences, which the Board saw fit to protect, are the very antithesis of the aim of the statute itself--*public* proceedings.

Also, the appellants did not have as much time to prepare for the deportation hearing as the Board suggests. Aliens facing deportation hearings are to be given notice which is "reasonable under the circumstances." A.S.C.A. §§ 41.0205(7)(a), 41.0607(a)(1). Notice of the hearing originally scheduled for October 20 was given October 19; after a continuance, the hearing was held on October 22, notwithstanding counsel's objection and request for more time. Appellants thus had only three days' notice of the deportation hearing, contrary to the Board's calculations, which erroneously included the time from which appellants were notified of their sponsorships' termination. Merely announcing the termination of the sponsorship also fails to meet the requirements of the notice, which is to include the "time and place" of the hearing. A.S.C.A. §§ 41.0205(7)(a), 41.0607(a)(1).

Conversely, appellants have not shown their need for the Immigration Board's documents, which are confidential by statute. A.S.C.A. § 41.0307. Obviously, this statute may not be used to deny

constitutionally guaranteed due-process rights, nor does it prohibit the Court from ordering the Attorney General to produce these records when needed. *See* U.S. Constitution Amend. 5; Rev. Const. Am. Samoa Art. I, § 2 ("No person shall be deprived of life, liberty, or property, without due process of law"). In fact, these documents were turned over to the Court for an *in camera* examination.

The political branches are solely responsible for formulating immigration policies, as long as deportees are accorded a minimal level of due process. However, a merely erroneous deportation decision does not violate due process. Likewise, discovery may not be used as a "fishing expedition" to look for possible claims and defenses.

Appellants have not adequately shown why they should have access to the confidential records. They argue that the records are necessary to determine if the sponsorship was revoked for the wrong reasons. However, an alien's sponsorship or employment may be terminated simply by giving written notice to the Board and the alien. Because nothing in A.S.C.A. § 41.0408(g) requires a sponsor to give the reasons for revoking a sponsorship or restricts the grounds for doing so, we see no basis for the claim that these statutorily protected documents should have been produced.

With regard to appellants' claim regarding their rights to cross-examination, it is clear that an alien in a deportation proceeding is entitled "to cross-examine witnesses presented by the government." A.S.C.A. § 41.0205(7)(c); A.S.A.C. § 41.0807(a); *see also* A.S.C.A. § 4.1026 (parties in a contested administrative hearing are entitled to "such cross-examination as is necessary for a full and true disclosure of the facts"). An improper curtailment of this right constitutes a violation of procedural due process. On the other hand, this is not to say that the right to cross-examination is without limits. It goes without saying that the right is subject to the familiar rules of evidence regarding probative worth and relevance.

Our review of the record reveals that the Board's Chairman had sustained a number of objections by the government on relevancy grounds when counsel sought to use cross-examination to assert the arguments that the Board should not allow the sponsorship's revocation and that one of the appellants moved at the direction of her sponsor. These claims had no bearing on the deportation decision, though. The Board does not have the power to bar a sponsorship's revocation, and a change of address must be reported no matter who initiated the alien's

142

move. *See* discussion, *supra*. At one point, however, the Board's Chairman did summarily cut off further cross-examination without inquiry as to the subject matter sought to be pursued by counsel. In this regard we are unable to see any basis for a ruling as to relevancy and therefore conclude that appellants' right to cross-examination was improperly curtailed.

As to the manner of appellants' arrest and detention, this issue is moot for purposes of the deportation appeal, as appellants are presently in Papua New Guinea and not in detention. Furthermore, A.S.C.A. § 41.0510(c) seems to answer appellants' concerns about the legality of an arrest warrant executed by a board member.

## D. Conclusion

Appellants' sponsorship has been revoked, and they are subject to deportation. A.S.C.A. § 41.0408. However, prior to any attempts at deportation, they are entitled to a public hearing. A.S.C.A. § 41.0205. Additionally, appellants were entitled to notice "which is reasonable under all the circumstances." A.S.C.A. §§ 41.205(7)(a), 41.0607(a)(1). They were not afforded either procedural guarantee. Moreover, appellants' rights to cross-examination were curtailed in violation of A.S.C.A. § 41.0205 and A.S.A.C. § 41.0807.

Under A.S.C.A. § 41.0212(3), a decision of the Immigration Board may be reversed, modified, or remanded for further proceedings if made upon unlawful procedure. For reasons given, we REVERSE.